**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| Johnny R. Davis, | : | Case No. 3:19-cv-00386 |
| | : | |
| Plaintiff, | : | District Judge Michael J. Newman |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.    INTRODUCTION

In May 2016, Plaintiff Johnny R. Davis filed an application for Disability Insurance Benefits and for a period of such benefits.  The claim was denied initially and upon reconsideration.  After a hearing at Plaintiff's request, Administrative Law Judge Jason C. Earnhart concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act.

The Appeals Council denied Plaintiff's request for review, and Plaintiff filed this action.  Plaintiff seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm ALJ Earnhart's non-disability decision.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 8), the Commissioner's Memorandum in Opposition (Doc. No. 11), and the administrative record (Doc. No. 7).

## II.     BACKGROUND

Plaintiff asserts that he has been under a disability since March 17, 2016.  At that time, Plaintiff was fifty years old.  Accordingly, Plaintiff was considered a "person closely approaching advanced age" under Social Security Regulations.  *See* 20 C.F.R. § 404.1563(d).  He has at least a high school education.  *See id.* § 404.1564(b)(4).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. No. 7, PageID 49-66); Plaintiff's Statement of Errors (Doc. No. 8), and the Commissioner's Memorandum in Opposition (Doc. No. 11).  Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see* 42 U.S.C. § 423(a)(1).  The term "disability"—as defined by the Social Security act—has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon.  42 U.S.C. §423 (d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

2

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.     THE ALJ'S DECISION

As noted previously, it fell to ALJ Earnhart to evaluate the evidence connected to

Plaintiff's application for benefits.  In doing so, he considered each of the five sequential

steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 416.920.  He reached

the following main conclusions:

> Step 1: Plaintiff did not engage in substantial gainful activity between his application date, May 23, 2016, and October 19, 2018.
>
> Step 2: Plaintiff has the severe impairments of degenerative disc disease of the cervical spine, status post-cervical discectomy and fusion, post-laminectomy syndrome, history of migraines, generative joint disease of the acromioclavicular joint, bilateral cubital and carpal tunnel syndrome, and obesity.
>
> Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work…subject to the following limitations: frequent handling and fingering; occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, crawling, and overheard reaching; no climbing of ladders, ropes, or scaffolds; and no exposure to hazards, such as dangerous machinery, unprotected heights, and commercial driving."
>
> Step 4: Plaintiff was unable to perform any of his past relevant work.
>
> Step 5: Plaintiff could perform a significant number of jobs that exist in the national economy.

(Doc. No. 7, PageID 51-66).  These main findings led the ALJ to ultimately conclude that

Plaintiff was not under a benefits-qualifying disability.  *Id.* at 66.

4

## V.    DISCUSSION

Plaintiff contends that the ALJ erred by failing to properly classify his mental health impairments, namely depression and anxiety, as medically determinable impairments, and that, as a result, the ALJ failed to consider these impairments when evaluating residual functional capacity. Conversely, the Commissioner maintains that the mental health impairments did not qualify as medically determinable impairments and that the decision was supported by substantial evidence and should be affirmed.

At step two of the sequential evaluation process, the ALJ is required to consider whether a claimant's impairments are "medically determinable impairments" and whether such impairments are severe.  20 C.F.R. § 404.1520(a)(4)(ii).  A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical laboratory diagnostic techniques." 20 C.F.R. § 404.1508.  Evidence from an acceptable medical source is required to establish a medically determinable impairment.  20 C.F.R. § 404.1513(a) ("We need evidence from acceptable medical sources to establish whether you have medically determinable impairment(s)"). Moreover, the impairment must meet the duration requirement, which means that it "must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. § 404.1509.  When a claimant is determined to have "at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003).

In the present case, the ALJ did not find that Plaintiff had any severe mental health impairments and did not delineate his non-medically determinable impairments or non-

severe medically determinable impairments.  Plaintiff contends that, as a result of ALJ Earnhart's silence, he must have considered Plaintiff's depression and anxiety to be non-medically determinable and this, in turn, means that the ALJ did not consider his depression and anxiety when assessing his residual functional capacity.  Plaintiff argues that this was error because the record shows he suffered from the medically determinable impairments of depression and anxiety that should have been considered as either severe or non-severe impairments in the ALJ's assessment of his residual functional capacity.

Plaintiff, relying on the evidence in the record, maintains that his diagnoses have been identified by an acceptable medical source, Dr. Chan from Mental Health Services for Clark County.  (Doc. 8, PageID 785).  Plaintiff also relies on evidence in the record from treating practitioner, Sarah Roberson, CNP, who is not an acceptable medical source.  *Id.*  While Plaintiff acknowledges that "he began reporting issues of depression," to Ms. Roberson in November 2017, he argues the pertinent records related to his mental health impairments span a period longer than 12 months.  *Id.* at 779, 784.  And, thus, his mental health impairments should have been identified as medically determinable impairments.

Having reviewed Plaintiff's supporting evidence, the Court finds that there is substantial evidence to support the ALJ's implied determination that Plaintiff's depression and anxiety were non-medically determinable impairments.  Plaintiff filed his application for disability benefits in May 2016.  (Doc. No. 7, PageID 49).  In July 2016, Dr. George Schulz, Ph.D., performed a psychological consultative evaluation and assessed no mental health diagnosis and no limitations in mental functioning.  *Id.* at 36, 407-08.  Plaintiff reported at that time that he did not have a mental issue that would affect his work, nor did

he feel depressed or anxious. *Id.* at 118, 405. Plaintiff did not report any prior mental health assessments or treatment, such as an assessment through a psychiatric care facility or outpatient counseling. *Id.* at 404.

The record does not reflect evidence related to Plaintiff's mental health treatment until November 2017. On November 2, 2017, Plaintiff was seen by Sarah Roberson, CNP. *Id.* at 536. In her progress notes from that date, Ms. Roberson indicated that Plaintiff "denies anxiety and depressed mood." *Id.* at 537. However, on November 30, 2017, Plaintiff reported feeling depressed in the "last couple weeks" and stated that he wanted to try an anti-depressant. *Id.* at 539. Ms. Roberson identified major depressive disorder (recurrent, moderate) in her assessment and prescribed medication. *Id.* at 541. In January 2018, Ms. Roberson noted that Plaintiff was taking medication and that he had noticed an improvement in depression symptoms. *Id.* at 543. Plaintiff contends that Ms. Roberson's notes continued to document issues with depression. (Doc. No. 8, PageID 785). However, according to the evidence in the record, Plaintiff did not present with any mental health concerns in subsequent visits with Ms. Roberson. (Doc. No. 7, Page ID 546-54).

Plaintiff voluntarily presented to Mental Health Services for Clark County in February 2018 for anxiety and depression. *Id.* at 648. Plaintiff reported to Cher Bernier, LPC, who is not an acceptable medical source, that his depression had originated in the previous three years due to events in 2016. *Id.* It is important to note that the evidence in the record shows that Plaintiff did not seek treatment until the end of 2017. *Id.* at 539. Ms. Bernier indicated that based on a clinical interview, Plaintiff's symptoms met the diagnostic criteria of major depressive disorder (single episode, moderate severity with

anxious distress).  *Id.* at 665.  She indicated that Plaintiff would receive outpatient counseling.  *Id.* at 666.  Plaintiff returned on March 13, 2018 and was seen for the first and only time by Dr. Yiuchung Chan.  *Id.* at 668. According to Dr. Chan's notes, the appointment lasted for approximately 17 minutes.  *Id.* at 672.  On that date, Plaintiff reported diminished depression despite recent stressors (i.e. hospitalizations of his mother), but increased anxiety and irritability at times.  *Id.*  Dr. Chan affirmed Ms. Bernier's finding of major depressive disorder in his notes and identified a separate anxiety diagnosis.  *Id.* at 670.  He recommended continuation of medication and supportive therapies.  *Id.* at 670-71. However, there are no records that indicate Plaintiff received further mental health treatment after March 2018, nor that Plaintiff ever participated in outpatient counseling or supportive therapies as recommended.

The evidence in the record indicates that Plaintiff was treated for depression and anxiety for approximately four to five months, from late-November 2017 to March 2018. *Id.* at 537-43, 648-71.  The lack of records related to on-going treatment, even by way of counseling or therapy, suggest that Plaintiff's mental health impairment does not meet the duration requirement.  And while he reported increased anxiety at times during his last and only appointment with Dr. Chan in March 2018, he indicated that his depression had diminished despite recent stressors.  *Id.* at 668. As noted, the record shows that Plaintiff was only seen by Dr. Chan on one brief occasion.  *Id.*  And moreover, Dr. Chan's impressions appear to be primarily based on Plaintiff's initial evaluation with Cher Bernier, LPC, rather than an independent assessment.  *Id.*  Such impressions are not sufficient for purposes of finding that Plaintiff's mental health impairments are medically determinable.

8

Thus, given the brevity of the treatment period—i.e. less than 12 months—and mere statements of diagnosis, it was reasonable for the ALJ to classify Plaintiff's mental health impairments as non-medically determinable impairments.

Plaintiff directs the Court to *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011). Plaintiff is correct in noting that *Reynolds* states "the ALJ [need] actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." *Id.* at 416. However, Plaintiff is incorrect in indicating that *Reynolds* supports his argument because the court in *Reynolds* goes on to state that "[w]ithout it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* Plaintiff appears to conflate steps two and three in stating that "[t]he Sixth Circuit supports remanding a case when the ALJ fails to determine whether a medically determinable impairment meets a listed impairment at step two." (Doc. No. 8, PageID 787). It is clear that this finding in *Reynolds* is specific to step three of the sequential evaluation process and not step two or even step four, which are the primary steps at issue here.

In addition to his contention that the ALJ failed to properly identify his mental health impairments as medically determinable impairments, Plaintiff alleges that the residual functional capacity determination was insufficient because his mental health impairments "received absolutely no consideration by the ALJ when constructing the residual functional capacity." (Doc. No. 8, PageID 783). This is incorrect.

Since the ALJ determined that Plaintiff's mental health impairments were non-medically determinable, the ALJ was not required to consider such impairments in the

9

residual functional capacity analysis. *See Jones v. Comm'r of Soc. Sec.*, No. 3:15-CV-00428, 2017 U.S. Dist. LEXIS 19232, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017) (Newman, M.J) (citing *Rouse v. Comm'r of Soc. Sec.*, No. 2:16-CV-0223, 2017 U.S. Dist. LEXIS 6172, 2017 WL 163384, at *4 (S.D. Ohio Jan. 17, 2017) (stating that a "claimed condition which is not 'medically determinable' need not be considered at all" in determining a claimant's RFC); 20 C.F.R. § 404.1527(a)(1)).

Moreover, the ALJ did in fact consider Plaintiff's mental health impairments when determining his residual functional capacity. ALJ Earnhart acknowledged Ms. Roberson's Medical Source Statement as to Ability to Perform Work Related Activities (Mental) as well as her observations and treatment of Plaintiff's mental health impairments. (Doc. No. 7, PageID 64). And while the ALJ did not explicitly identify Cher Bernier, LPC, or Dr. Yiuchung Chan of Mental Health Services for Clark County, he does recognize the details of Plaintiff's visit with Dr. Chan on March 13, 2018. *Id.* The ALJ also correctly notes that the record does not indicate that Plaintiff received any mental health treatment after that time. *Id.* In his assessment, the ALJ stated that the evidence related to Plaintiff's mental health impairments, as characterized by Ms. Roberson, was "not consistent with even mild limitations in functioning." *Id.* This reveals that the ALJ considered Plaintiff's mental health impairments in his RFC analysis.

Finally, even if the ALJ were found to have erred in finding that Plaintiff's mental health impairments were non-medically determinable impairments, such an error would have been harmless because the ALJ considered Plaintiff's mental health impairments in his assessment of Plaintiff's residual functional capacity. *See Mardis v. Comm'r of Soc.*

10

*Sec.*, 2019 U.S. Dist. LEXIS 29446, 2019 WL 911087, at *3 (citing *Jones v. Comm'r of Soc. Sec.*, 2017 U.S. Dist. LEXIS 19232, 2017 WL 540923, at *7 (Newman, M.J.) (explaining that "any error at Step Two is harmless if the ALJ considers all impairments in determining Plaintiff's RFC")).  Therefore, even if Plaintiff's impairments were medically determinable, and a required part of the RFC analysis, there is substantial evidence to support that ALJ Earnhart did in fact satisfy this requirement.

Accordingly, for the above reasons, Plaintiff's Statement of Errors lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1.      The ALJ's non-disability decision is affirmed; and

2.      The case is terminated on the Court's docket.

January 12, 2021                                    *s/ Sharon L. Ovington*
                                                     Sharon L. Ovington
                                                     United States Magistrate Judge

11

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).